UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TAMEKA BANKS, ET AL. | CIVIL ACTION |
| VERSUS | NO. 16-4316 |
| FIRST STUDENT MANAGEMENT LLC, AND FIRST STUDENT, INC. | SECTION "N" (3) |

**ORDER AND REASONS**

Presently before the Court is "Defendants' Motion to Dismiss Counts I, III, and IV of Plaintiffs' First Amended Complaint" (Rec. Doc. 19) filed by First Student Management LLC and First Student Management, Inc. (collectively "First Student"). Plaintiffs[1] have opposed the motion (Rec. Doc. 22), and First Student has submitted a "Reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss" (Rec. Doc. 25).

---

[1] The initial Complaint named Plaintiffs Tameka Banks, Roslyn Alexander, Wilbert Arnold, Kathy Atkins, Ethel Bainguel, Kimberly Barton, Tequila Bell, Vicki Boyd, Sharon Bradley, Jennifer Campbell, Milton Carter, Nancy Castello, Fabian Cmiel, Jomaka Coleman, Sylvia Collins, Tammy Dabel, Shaneka Davis, Brittany Derozin, Michele Drevecky, Katrina Fort, Tammy Haile, Dana Harrison, Bernice Hayes, Terry Henderson, Wanda Henderson, Angela Hotard, Lesia Howard, Barney Huggins, Emily Hughes, Oliver Humbles, Brenda Jackson, Marie Jackson, Afton Johnson, Kathy Jones, Tracey Kelley, Ella Kelly, Ella Kent, Angelia King, Donna Leonard, Elizabeth Lewis, Garilyn London, Gary London, Janae London, Linyonda London, Vanessa London, Holly Martrain, Sandra McCoy, Brenda McKenzie, Natisha McKneely, Marcia Palmer, Janette Partin, Vincent Pierre, Regina Pyle, Marion Richardson, Gwendolyn Roy, Carolyn Rucker, Loretta Singleton, Markeisha Smith, Tyjuana Taylor, Doretha Thomas, Jennifer Thompson, Deanna Townsel, G. Carlisle Waldron, Carlette Walker, Erika Washington, Abigail Williams, and Shana Wilson. *See* Rec. Doc. 1. Thereafter, the First Amended Complaint named Dana Calvin, Tarrilyn Bradley, Antoine Lemon, Cynthia Charles, Cassandra Tezero, Myra Durgin, Ellen Chapmen, Loisia Fournier, Anjanetta Noel, Cynthia Lavigne, James Fontenot, Mary Toussaint, Pearl Giddens, and Rose Chelette as additional Plaintiffs. *See* Rec. Doc. 14.

Having carefully considered the parties' supporting and opposing submissions and applicable law, **IT IS ORDERED** that First Student's motion is **GRANTED** for the reasons stated herein.

I.  **BACKGROUND**

The instant suit arises out of an employment dispute between First Student and bus drivers and driver assistants employed by First Student. On May 6, 2016, Plaintiffs (the drivers and driver assistants) filed a Complaint (Rec. Doc. 1) in this Court alleging four causes of action relating to their employment with First Student, including claims under the Fair Labor Standards Act ("FLSA"). Thereafter, Plaintiffs filed a First Amended Complaint (Rec. Doc. 14) naming additional Plaintiffs but alleging the same four causes of action, which are: (I) FLSA-Claim for Unpaid Time at a Regular Rate of Pay; (II) FLSA- Overtime Claim; (III) Breach of Contract- Straight Time Claim; and (IV) Breach of Contract- Overtime Claim. (Rec. Doc. 14).

Thereafter, First Student filed "Defendants' Motion to Dismiss Counts I, III, and IV of Plaintiffs' First Amended Complaint" (Rec. Doc. 19). With regards to Count I, First Student alleges that this claim should be dismissed, as "it purports to seek damages for straight time damages under the FLSA." (Rec. Doc. 19-1). Specifically, First Student argues that courts within the Fifth Circuit do not "entertain" causes of action under the FLSA that seek to recover straight time pay, unless those rates of pay fall below the minimum wage. *Id*. In response, Plaintiffs claim that First Student misstates the law, and "the FLSA does permit a claim for straight time pay when an allegation has been made that an employee worked in excess of 40 hours in a workweek and did not receive appropriate overtime compensation." (Rec. Doc. 22). However, in its reply, First Student explains that such an argument relies solely on cases that interpret rights under contracts

for defined minimum paid hours and rates, creating a contractual right to gap time "up and above" the FLSA requirements. (Rec. Doc. 25).

As for Count III, the breach of contract claim for straight time wages, First Student makes several arguments in support of dismissal. First, it argues that such claim should be dismissed with prejudice, as these claims are preempted by Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, et seq. ("Section 301"). (Rec. Doc. 19-1). In particular, First Student asserts that Section 301 is the exclusive remedy for a claim under state law to remedy an alleged breach of a collective bargaining agreement. *Id*. However, if this Court disagrees, First Student alternatively argues that if this claim is not preempted by Section 301, it should dismissed for Plaintiffs' failure to exhaust their remedies under the "Labor Agreement." *Id*. Additionally, First Student argues that if Count III is not dismissed for the two aforementioned reasons, it should be dismissed because Plaintiffs have failed to adequately allege a contract under Louisiana law, apart from the collective bargaining agreement. *Id*.

In response, Plaintiffs argue that Count III is not preempted by the LMRA, as preemption under Section 301 is not automatically granted whenever there is a collective bargaining agreement. (Rec. Doc. 22). Furthermore, Plaintiffs counter that the collective bargaining agreement is evidence supporting a breach of contract action. *Id*. Plaintiffs argue that not only is the collective bargaining agreement evidence of a contract but the language in the agreement indicates that "[h]ours of work and overtime shall be negotiated at the local level." *Id*. (internal quotations omitted). Plaintiffs further allege that the existence of a contract is a finding of fact, and at this early stage of the litigation, it be would "improper to dismiss the breach of contract claims based solely on Defendants' disingenuous posture that there are no contracts in place relating to their obligation to pay wages to Plaintiffs." *Id*.

3

In its reply, First Student argues that Count III should be dismissed on three separate grounds. (Rec. Doc. 25). First, the collective bargaining agreement provides no more protection than the requirements of the FLSA. *Id*. Second, the claim is preempted by Section 301 because the state law causes of action based upon a collective bargaining agreement, involving the payment of wages, are "inextricably intertwined with consideration of the terms of the labor contract." *Id*. (citing *Richter v. Merchants Fast Motor Lines, Inc.*, 83 F.3d 96, 97 (5th Cir. 1996)) (internal quotations omitted). Third, the claim should be dismissed because Plaintiffs have not alleged that they have exhausted the grievance procedures that are established within the collective bargaining agreement. *Id*.

As to Count IV of Plaintiffs' First Amended Complaint, the breach of contract claim for overtime pay, First Student makes the same arguments mentioned above involving preemption by Section 301 of the LMRA, failure to exhaust any grievance procedures established by the collective bargaining agreement, and Plaintiffs' failure to adequately allege the existence of a contract under Louisiana law. (Rec. Doc. 19-1). Additionally, First Student also argues that Count IV should be dismissed because it is preempted by the FLSA. *Id*. In opposition to these arguments, Plaintiffs assert the same arguments made in regards to Count III: (1) the breach of contract claim is a properly pled cause of action, and (2) the breach of contract claim is not preempted by Section 301 of the LMRA. (Rec. Doc. 22). Additionally, Plaintiffs argue that Count IV is not preempted by the FLSA, as the state law claim entitles the employee to compensation above and beyond that to which employees are entitled under the FLSA. *Id*. In its reply, First Student makes the same three arguments addressed in the preceding paragraph regarding Count III of Plaintiffs' First Amended Complaint. (Rec. Doc. 25).

II.  **LAW AND ANALYSIS**

In order to survive a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Twombly*, 550 U.S. at 570). Furthermore, the allegations within a complaint "must make relief plausible, not merely conceivable, when taken as true." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009).

Under Rule 12(b)(6), the Court "construes the complaint liberally in favor of the plaintiff, and takes all facts pleaded in the complaint as true." *Gregson v. Zurich American Ins. Co.*, 322 F.3d 883, 885 (5th Cir. 2003) (citing *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th Cir. 1986)). Further, "[a]ll questions of fact and any ambiguities in the controlling substantive law must be resolved in the plaintiff's favor." *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001). However, this tenet is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678. A complaint is unsatisfactory "if it tenders 'naked assertion[s]' devoid of further factual enhancement." *Id*. (citing *Twombly*, 550 U.S. at 557). Legal conclusions must be supported by factual allegations. *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (citing *Iqbal*, 556 U.S. at 680).

**A.   Count I- FLSA Claim for Unpaid Time at a Regular Rate of Pay**

Count I of Plaintiffs' First Amended Complaint seeks damages for purported violations of the FLSA for First Student's failure to pay for all straight time worked by Plaintiffs during weeks in which Plaintiffs worked more than forty hours. The FLSA "governs minimum wages and maximum hours for non-exempt 'employees who in any workweek [are] engaged in commerce or

in the production of goods for commerce, or [are] employed in an enterprise engaged in commerce or in the production of goods for commerce.'" *Sandifer v. United States Steel Corp.*, 134 S.Ct. 870, 875, 187 L.Ed.2d 729 (2014) (quoting 29 U.S.C. § 206(a) (minimum wages); § 207(a) (maximum hours); see § 213 (exemptions)). With regards to overtime claims, the FLSA "mandates that 'no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.'" *Harvill v. Westward Commc'ns, LLC*, 433 F.3d 428, 441 (5th Cir.2005) (quoting 29 U.S.C. § 207(a)(1)).

However, at issue in Count I of Plaintiffs' First Amended Complaint are "gap time" claims, where Plaintiffs allege that they were not paid for all straight time worked when they worked over forty hours in a week. (Rec. Doc. 14). Although the Fifth Circuit has not directly defined or addressed "gap time" claims, district courts within the circuit have defined "gap time" as "time that is not covered by the overtime provisions because it does not exceed the overtime limit, and . . . time that is not covered by the minimum wage provisions because, even though the work is uncompensated, the employees are still being paid a minimum wage when their salaries are averaged across their actual time worked." *Green v. Dallas County Schools*, No. Civ.A. 3:04CV891P, 2005 WL 1630032, at *3 (N.D.Tex. July 6, 2005) (internal citations and quotations omitted); see also *Newsom v. Carolina Logistics Services, Inc.*, Cause No. 2:11CV172-DCB-JMV, 2012 WL 3886127, at *1 (N.D.Miss. Sept. 6, 2012); *Carman v. Meritage Homes Corp.*, 37 F.Supp.3d 860, 865 (S.D.Tex. Feb. 28, 2014). Again, while the Fifth Circuit has not addressed the validity of such claims, several district courts in this circuit have held that "gap time" claims for unpaid straight time wages, which do not implicate the overtime or minimum wage requirements, are generally not viable under the FLSA. *See Green*, 2005 WL 1630032, at *3; *Valcho v. Dallas*

6

*County Hosp. Dist.*, 658 F.Supp.2d 802, 811 (N.D.Tex. Aug. 14, 2009); *Newsom*, 2012 WL 3886127, at *1.

In support of the contention that "gap time" claims that do not implicate minimum wage and overtime requirements are not cognizable under the FLSA, some district courts rely on the Fourth Circuit's *Monahan v. County of Chesterfield, Va.*, 95 F.3d 1263, 1284 (4th Cir. 1996) opinion. *See Green*, 2005 WL 1630032, at *3; *Ebbs v. Orleans Parish School Bd.*, Civil Action No. 04-1198, 2012 WL 3644168, at *5 (E.D.La. Aug. 24, 2012); *Valcho*, 558 F.Supp.2d at 811. In *Monahan*, the Fourth Circuit found that "[f]or there to be an overtime gap time cause of action under the FLSA, a violation of section 206 or 207 of the Act must first exist . . . Absent a minimum wage/maximum hour violation, we find no remedy under the FLSA for pure gap time claims." 95 F.3d at 1284. Therefore, while the Fourth Circuit does not recognize "pure gap time" claims under the FLSA, it does recognize an "overtime gap time" cause of action. *Id*. As explained by the Third Circuit, an "overtime gap time" claim is a claim "by an employee who exceeds the overtime threshold, but whose employment contract does not compensate him or her for all non-overtime hours." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 244 (3d Cir. 2014).

Within the Fifth Circuit, district courts have disagreed over whether to recognize "overtime gap time" claims. *Compare Valcho*, 558 F.Supp.2d at 811 ("As is suggested in the definition of 'gap time' claims, courts generally recognize claims for unpaid straight-time pay when the employee has worked overtime qualifying hours during that pay period."), *with Carman*, 37 F.Supp.3d at 867 ("This Court respectfully disagrees with our sister courts in the Fifth Circuit, and now holds that so long as section 206 is not violated, an employee may not recover for straight time claims under the FLSA. This is so even when the employee has worked overtime."). While those courts recognizing "overtime gap time" claims cited the Fourth Circuit's *Monahan* opinion,

7

those that have rejected such claims have relied on the Second Circuit's *Lundy v. Catholic Health Sys. Of Long Island Inc.*, 711 F.3d 106, 115-16 (2d Cir. 2013) opinion for support.

In *Lundy*, the Second Circuit found that "[s]o long as an employee is being paid the minimum wage or more, FLSA does not provide recourse for unpaid hours below the 40–hour threshold, even if the employee also works overtime hours the same week." 711 F.3d at 116. The court reasoned:

> In this way federal law supplements the hourly employment arrangement with features that may not be guaranteed by state laws, without creating a federal remedy for all wage disputes—of which the garden variety would be for payment of hours worked in a 40–hour work week. For such claims there seems to be no lack of a state remedy, including a basic contract action.

*Id*. The court went on to state that the interpretive guidance upon which the Fourth Circuit relied in its *Monahan* opinion was not persuasive. *Id*. The Second Circuit explained that the Department of Labor's guidance lacked both statutory support and reasoned explanation. *Id*. The court also noted that a district court within the Fourth Circuit, though bound by the *Monahan* precedent, explained that "one could . . . take the approach that compensation for FLSA overtime hours is the sole recovery available under the FLSA maximum hour provision. This approach would leave the contractual interpretation and determination of straight time compensation to state courts, which are better positioned to address these issues." *Id*. (citing *Koelker v. Mayor & City Council of Cumberland*, 599 F.Supp.2d 624, 635 n. 11 (D.Md. Feb. 24, 2009)). Therefore, courts within the Fifth Circuit have opted to follow this line of reasoning in rejecting overtime gap time claims. *See Carman*, 37 F.Supp.3d at 867.

Additionally, three district courts have previously addressed employees' allegations regarding "overtime gap time" pay against First Student. Each of those courts also explicitly

8

rejected arguments in support of an "overtime gap time" claim. *See Spencer v. First Student Management LLC*, No. 15 C 9069, 2016 WL 693252, at *2 (N.D.Ill. Feb. 22, 2016) ("Contrary to the Department of Labor's interpretation of the law . . . I cannot accept the idea that the FLSA implicitly provides a third private right of action—the recovery of straight time pay that exceeds the minimum wage—*only* when a worker's hours exceed the statutory threshold for overtime pay.") (emphasis in original); *Hensley v. First Student Management, LLC*, Civil Action No. 15-3811, 2016 WL 1259968, at *4 (D.N.J. Mar. 31, 2016) ("Although the language of the C.F.R. may infer a claim for overtime gap time pay, this Court agrees with the reasoning of the Second Circuit in *Lundy* that such a conclusion results in an expansion of the FLSA."); *Rosario v. First Student Management LLC*, Civil Action No. 15-6478, 2016 WL 4367019, at *6 (E.D.Pa. Aug. 16, 2016) ("Here, the plaintiffs encourage me to adopt the Fourth Circuit's approach as set forth in *Monahan* . . . I decline to do so. Rather, I find that a plain reading of the FLSA's statutory text simply does not support a claim for the failure to pay straight or gap time.").

Likewise, this Court also declines to recognize a claim for "overtime gap time" under the FLSA. A plain reading of the statutory text does not lend itself to an expansion of its coverage. Moreover, there is no absence of state law or breach of contract remedy in this regard. Furthermore, "the cases holding otherwise do not explain how the potentially arbitrary consequences of their rules are supported by the language of the FLSA." *Espenschneid v. DirectSat USA, LLC*, No. 09-cv-625-bbc, 2011 WL 10069108, at *13 (W.D.Wis. Apr. 11, 2011). Specifically, those cases do not adequately or persuasively demonstrate why prohibiting employees who work below the overtime threshold from asserting gap-time claims, but allowing an employee who works just above the overtime threshold to assert such a claim, furthers the remedial purpose of the FLSA.

*Id*. Therefore, Count I of Plaintiffs' First Amended Complaint for unpaid time at a regular rate of pay under the FLSA is dismissed with prejudice.

### B. Count III- Breach of Contract Claim for Straight Time Pay and Count IV- Breach of Contract Claim for Overtime Pay

In both Counts III and IV of Plaintiffs' First Amended Complaint, Plaintiffs assert breach of contract claims under Louisiana law, and in support of these claims, plaintiffs attach the "National Master First Student Agreement." ("National Agreement") (Rec. Doc.14-2). However, First Student argues that these claims must be dismissed because Section 301 of the Labor Management Relations Act ("LMRA") preempts these claims. (Rec. Doc. 19-1). Section 301 "provides the requisite jurisdiction and remedies for individual employees covered under a collective-bargaining agreement between that individual's employer and the union." *Thomas v. LTV Corp.*, 39 F.3d 611, 616 (5th Cir. 1994) (citing *Landry v. Cooper/T. Smith Stevedoring Co., Inc.*, 880 F.2d 846, 850 (5th Cir.1989)). Section 301 of the LMRA provides in pertinent part:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). The preemptive effect of this section applies to causes of action arising out of contract and tort, and "[p]reemption occurs when a decision on the state claim is inextricably intertwined with consideration of the terms of the labor contract or when the application of state law to a dispute requires interpretation of the collective-bargaining agreement." *Thomas*, 39 F.3d at 616-17. (internal citations omitted). Furthermore, those claims "only tangentially involving provisions of collective-bargaining agreements are not preempted by section 301." *Id*. at 617

10

(citing *Lingle v. Norge Div., Magic Chef, Inc.*, 486 U.S. 399, 406-07, 108 S.Ct. 1877, 1881-82, 100 L.Ed.2d 410 (1988)).

Here, Plaintiffs allege that First Student has violated the terms of the National Agreement, as well as other agreements covering rates and hours that were negotiated at the local level or on an individual basis. (Rec. Doc. 14). Specifically, Plaintiffs' First Amended Complaint alleges that,

> 113. The National Agreement was and is made between the Teamsters First Student National Negotiating Committee and First Student.
>
> 114. The National Agreement covers "operations in, between and over all of the states, territories and possessions of the United States." In the National Agreement, First Student agreed to pay Plaintiffs and all class members compensation "for all time spent in service of [First Student] the Employer as directed by the Employer." (*See* Exhibit A at p. 11, Art. 39).
>
> 115. Rates and hours were in fact negotiated by Plaintiffs and those similarly situated at the local level or on an individual basis.
>
> 116. Plaintiffs were performing work covered by the National Agreement and other agreements with First Student, as Plaintiffs were working as directed by First Student.
>
> 117. Pursuant to the National Agreement, Plaintiffs and members of the Louisiana Class are entitled to be paid for all time they are required to spend in First Student's service at their place of work.
>
> 118. First Student violated the terms of Agreements with Plaintiffs and members of the Louisiana Class by regularly and repeatedly failing to properly compensate Plaintiffs and class members for the actual time they worked each week.

*Id*. Although Plaintiffs argue in their opposition that "it is simply not possible for the Court to determine whether or not the state law claims for unpaid wages and overtime are 'inextricably intertwined' to the agreements signed by the parties," the allegations in the First Amended Complaint *explicitly state* that First Student violated the terms of the various agreements with Plaintiffs. *See* Rec. Doc. 22 and Rec. Doc. 14. Therefore, Plaintiffs' state law claims are not only

"inextricably intertwined" with the National Agreement, but the claims are in fact that First Student breached such agreement and other local agreements, i.e. breach of contract claims.

While "claims for breach of the collective bargaining agreement itself are automatically preempted, claims arising out of the breach of other contracts between plaintiff and the employer, claims whose resolution do not involve an interpretation of the collective bargaining agreement, are not ordinarily subject to preemption." *Watson v. Prudential Ins. Co.*, No. Civ. A. 02-656, 2003 WL 715756, at *2 (E.D.La. Feb. 27, 2003) (citing *Parham v. Carrier Corp.*, 9 F.3d 383, 390 (5th Cir. 1993)). Furthermore, the Court shall "necessarily consider the specific contract upon which plaintiff bases his claim as well as the defenses the employer is asserting" in determining whether or not a state law contract claim is ultimately preempted by Section 301.[2] *Id.* (citing *Branson v. Greyhound Lines, Inc.*, 126 F.3d 747, 754 (5th Cir. 1997)).

Plaintiffs' claims in their First Amended Complaint involve interpretation of the National Agreement provision stating that "[a]n employee shall start a shift at the time designated by the Company, *shall be paid for all time spent in service of the Employer as directed by the Employer.*" (Rec. Doc. 14-2) (emphasis added). Plaintiffs detail certain "preliminary activities," such as reporting to work, standing in line, and receiving job assignments, that each bus driver must complete before actually logging into the EVIR system or being "on the clock" for which Plaintiffs allege they are not being compensated (Rec. Doc. 14). Similarly, Plaintiffs also detail certain "postliminary activities," including post-trip inspections, cleaning the bus, returning equipment, and "sleeping child" inspections, which they also allege are uncompensated work duties. *Id.*

---

[2] Plaintiffs have only submitted the National Agreement for the Court's review. Although that agreement and Plaintiffs' First Amended Complaint reference other agreements, such agreements were not presented to the Court for consideration.

Plaintiffs further maintain that drivers are oftentimes only paid for the "Estimated Route Time," which is less than the time actually worked. *Id*. Such allegations require this Court to decide whether these activities fall within the definition of "all time spent in the service of the Employer," even if such clarification can be found in other agreements between First Student and individual plaintiffs. Therefore, since Plaintiffs' breach of contract claims necessarily require this Court to decide what activities constitute "all time spent in the service of the Employer" under the terms of the National Agreement, such claims are preempted by Section 301 of the LMRA.

While this Court may dismiss Plaintiffs' claims as preempted, it may also allow such claims to proceed as Section 301 claims. *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). However, even if this Court allowed Plaintiffs' breach of contract claims to proceed as Section 301 claims, First Student argues that Plaintiffs' claims should be dismissed since the National Agreement's grievance procedure was not utilized by Plaintiffs prior to filing the instant suit. "If the agreement contains grievance or arbitration provisions, the employee must attempt to exhaust them, and he is bound by the finality provisions of the agreement, subject to very limited judicial review." *Smith v. Kerrville Bus Co.*, 748 F.2d 1049, 1052 (5th Cir. 1984) (internal citations omitted). Put another way, "[i]f the arbitration and grievance procedure is the exclusive and final remedy for breach of the collective bargaining agreement, the employee may not sue his employer under § 301 until he has exhausted the procedure. *Daigle v. Gulf State Utilities Co., Local Union No. 2286*, 794 F.2d 974, 977 (5th Cir. 1986) (citing *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965)). However, if the collective bargaining agreement does not in fact provide that the grievance procedure is "the exclusive and final remedy for breach of contract claims," then the employee

13

may sue his employer in federal court under Section 301. *Id*. (citing *Vaca v. Sipes*, 386 U.S. 171, 183, 87 S.Ct. 903, 913, 17 L.Ed.2d 842 (1967)).

The National Agreement establishes a Joint National Grievance Review Committee ("JNGRC"), in which "[t]he purpose of the committee is to review such disputes prior to the submission of the matter to the *final authority for resolution* (whether an arbitrator or a panel) set forth in the local agreement out of which the dispute arises or this National Agreement." (Rec. Doc. 14-2) (emphasis added). Furthermore, in describing the authority of the JNGRC, the National Agreement states:

> The JNGRC shall function with the same authority as a neutral arbitrator or mediator. The JNGRC shall have the authority to issue final and binding decisions. If the JNGRC deadlocks on a case or rejects consideration of a case, the matter shall be referred back to the parties for final disposition under the provisions of the local agreement. Unresolved disputes arising from the National Agreement shall be submitted to final and binding arbitration upon written notice from either party.

(Rec. Doc. 14-2). Thus, the National Agreement clearly contains a grievance procedure for an employee to utilize when they have "issues of national or regional significance including but not limited to company Policies like the Freedom of Association policy." *Id*. The language within the National Agreement makes clear that the procedures set up in local agreements, and in the National Agreement, are the final and binding dispute resolution mechanisms to be utilized by employees. The JNGRC "Deadlock Procedure" in the National Agreement further provides:

> In situations where the National Joint Grievance Review Committee deadlocks and provisions of the National Master, FOA or other company policies, are central to the dispute (Articles 1 through 49), such dispute shall be submitted to a mutually agreeable neutral arbitrator for final and binding resolution . . . The dispute resolution machinery contained in local riders, addenda or supplements do not have authority to interpret the provisions of the National Master (Articles 1 through 49) without the consent of the Employer and the National Union Committee.

14

*Id*. This language within the National Agreement establishes that any grievance involving interpretation of any provisions contained within the collective bargaining agreement must go through the specific procedure outlined above, and even the local dispute resolution mechanisms do not have the requisite authority to hear such grievances.

Therefore, as Plaintiffs allege First Student breached the National Agreement and other agreements that have not been submitted to the Court, Plaintiffs are bound to utilize the JNGRC, or other procedures as established by the National Agreement or local agreement, for final and binding resolution before filing suit in this Court. *See Bui v. Nailor Industries of Tex., Inc.*, Civil Action No. H-05-04350, 2006 WL 1900626, at *2 (S.D.Tex. July 11, 2006) ("First, Plaintiffs have failed to plead that they exhausted the grievance and arbitration procedures provided in the CBA. There is no indication that these procedures are optional…"). Even if this Court allowed Plaintiffs' state law breach of contract claims to proceed as Section 301 claims, Plaintiffs fail to allege they have first attempted to utilize the grievance procedure established in the National Agreement before filing the instant suit.[3] Therefore, for the reasons stated herein, the Court dismisses Counts III and IV of Plaintiffs' First Amended Complaint.[4]

### III.  CONCLUSION

---

[3] In *Mitchell v. Continental Airlines,* 481 F.3d 225, 231 (5th Cir. 2007), the Fifth Circuit explained that "[a]n employee may, however, bring suit without previously exhausting these remedies if (1) the union wrongfully refuses to process the employee's grievance, thereby violating its duty of fair representation; (2) the employer's conduct amounts to a repudiation of the specified contractual, remedial procedures; or (3) exhaustion of the contractual remedies would be futile." Here, Plaintiffs do not allege any of these grounds as the reason for not first complying with the National Agreement's grievance procedures. Therefore, these exceptions would not apply in this case.

[4] It is unnecessary for the Court to also address First Student's other arguments regarding Counts III and IV of Plaintiffs' First Amended Complaint.

Considering the foregoing;

**IT IS ORDERED** that First Student's Motion to Dismiss (Rec. Doc. 19) is **GRANTED**, and Counts I, III, and IV of Plaintiffs' First Amended Complaint are hereby **DISMISSED**.

New Orleans, Louisiana, this 15th day of February 2017.

_____
**KURT D. ENGELHARDT**
**UNITED STATES DISTRICT JUDGE**